# EXHIBIT A

CONFIDENTIAL



# EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (this "Agreement"), is dated September 11, 2017 and is between GUIDEPOINT GLOBAL, LLC, a New York limited liability company (the "Company"), on behalf of itself, its subsidiaries and affiliate companies (the "Company Group"), and **Valentia Villetti**, an individual ("you" or the "Employee").

WHEREAS, the parties hereto desire to enter into this Agreement to define and set forth the terms and conditions of the engagement of the Employee by the Company;

NOW, THEREFORE, in consideration of the Employee's employment by the Company, which Employee acknowledges to be good and valuable consideration for Employee's obligations hereunder, the Company and the Employee hereby agree as follows:

1. <u>Position; Term of Agreement</u>. The Company hereby engages the Employee for the position of Senior Healthcare Content Strategist and the Employee hereby agrees to serve in such capacity, for the period beginning on the date hereof, and ending on the date on which the Employee's employment is terminated in accordance with paragraph 11 below (the "Employment Period").

2. <u>Additional Employment Terms</u>. Additional terms of Employee's Employment with Company, including Employee's compensation and benefits, are fully set forth in the Employment Offer Letter dated August 28, 2017 and incorporated herein by reference.

3. <u>Performance of Duties</u>. Employee shall perform the services and duties as may be assigned to Employee from time to time faithfully, efficiently, to the best of Employee's abilities and in accordance with the directions and orders of the Company. Employee shall comply with the Company's rules regulations, policies and procedures, as the same may be revised from time to time.

4. <u>Competing Businesses; Work Product</u>.

(a) Employee acknowledges that the Company's relationship with its customers, clients, consultants, advisors, vendors, employees, and other entities are valuable business assets, and that there is a significant likelihood that if Employee directly or indirectly competes with the Company, it would result in the unauthorized use or disclosure of Proprietary Information (as hereinafter defined) or interfere with the Company's relationship with its customers, clients, consultants, advisors, vendors, employees, and other entities, which use or disclosure would be extremely difficult to prove. Accordingly, during the period of Employee's employment under this Agreement, and for six (6) months after the termination of Employee's employment with the Company, the Employee shall not, (a) directly or indirectly, either through any form of ownership, or as a director, officer, principal, agent, employee, independent contractor, employer, advisor, consultant, shareholder, partner or in any other capacity, either for Employee's benefit or the benefit of any other person or entity, shall not be employed by or otherwise engage in or be interested in (i) any business in competition with the Company Group including, without limitation, any company which charges customers fees for providing research by a firm that employs or contracts a Network of Experts (as hereinafter defined), anywhere where the Company Group has operations, customers or such Experts (a "Competitive Business"), or (ii) any business that is a client of the Company and with which Employee had



contact through Employee's work at the Company, or (b) use in any Competitive Business any Proprietary Information (as hereinafter defined) or Work Product (as hereinafter defined). A "Network of Experts" shall mean a number of individuals who are experts within a field or industry based upon current or previous employment, design, marketing or any other involvement with that industry. Employee further acknowledges that Employee has carefully considered the nature and extent of these restrictions, and acknowledges that the same are reasonable in time and territory, are designed to eliminate competition which would otherwise be unfair to the Company, do not stifle the inherent skill and experience of Employee, would not operate as a bar to Employee's sole means of support, are fully required to protect the legitimate interests of the Company, and do not confer a benefit upon the Company disproportionate to the detriment to Employee. Finally, the Company's business is national and international in scope, and the parties therefore acknowledge that the lack of geographic limitations on the scope of the restrictions imposed by this Agreement are appropriate.

(b) The Company shall own all rights in the Work Product (as hereinafter defined), which shall be deemed to be work made for hire for the Company. Employee hereby irrevocably relinquishes for the benefit of the Company and its assigns all rights in and to all Work Product. "Work Product" shall mean all intellectual property rights, including all trade secrets, U.S. and international copyrights, trademarks, trade names, patentable inventions, discoveries, and other intellectual property rights in any programming, design, documentation, technology, research, or other work product that is created in connection with Employee's employment by the Company.

5. Confidentiality.

(a) Nondisclosure; Use Restrictions; Recognition of Company's Rights. At all times during the term of this Agreement and thereafter, Employee will (i) hold the Company's Proprietary Information (defined below) in strictest confidence, (ii) not disclose, communicate, lecture upon or publish any of the Company's Proprietary Information, and (iii) not access, or use for personal benefit, or for the benefit of anyone other than the Company, any of the Company Group's Proprietary Information, or copy any documents, records, files or other media containing Proprietary Information, or remove any such documents, records files or media from the premises or control of the Company, except, in each case, as required in connection with Employee's authorized employment duties to the Company, or with the prior express authorization of an officer of the Company. Employee hereby irrevocably assigns to the Company any rights Employee may have or acquire in such Proprietary Information and recognizes that all Proprietary Information will be the sole property of the Company and its assigns. Upon the termination of this Agreement, or at any time upon request, Employee shall return to the Company all Proprietary Information then in his or her possession.

(b) Proprietary Information. The term "Proprietary Information" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company Group, and the Company's affiliates, customers, clients, vendors, employees, agents and contractors. By way of illustration but not limitation, "Proprietary Information" includes (i) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs, techniques and research; (ii) information regarding the Company's organization or structure, plans for research and development, new products, marketing, advertising, and other business plans, budgets and financial data, licenses, pricing and costs, and suppliers; (iii) the identity of current and prospective clients of the Company, and Company's current and prospective



contracts, policies, standards, procedures and practices; (iv) any and all information regarding the experts contracted by the Company, the Company's business model incorporating the use of such experts and the technology and trade secrets in connection with the utilization of such business model; and (v) information regarding the skills and compensation of other employees of the Company.  Proprietary Information also shall include any information that is provided to or obtained by the Company Group from third parties and is subject to obligations of confidentiality.

(c) <u>Absence of Conflicting Agreements; No Improper Disclosure or Use of Materials</u>.  Employee represents that Employee is not bound by any agreement or any other existing or previous business relationship, including any employment contract, restrictive covenant, or other restriction which would affect Employee's ability to accept the Company's offer of employment or the Company's ability to extend such offer, or which conflicts with or prevents the full performance of Employee's duties and obligations to the Company during the course of Employee's employment by the Company.  Employee acknowledges that Employee has been expressly advised by Company that Company does not desire to acquire from Employee any trade secrets, know-how, or confidential business information that Employee may have acquired from others, and Employee agrees that Employee shall not disclose or use such information in connection with Employee's employment by the Company in violation of Employee's obligations to others.

6. <u>Non-Solicitation of Employees, Contractors and Agents</u>.  The Employee agrees that, during the term of this Agreement and for a two (2) year period thereafter, Employee will not, directly or indirectly, solicit or recruit any employee, contractor or agent of the Company to resign from the Company or to accept employment or other engagement with Employee or with any other person or company.

7. <u>Non-Disparagement</u>.  During the term of this Agreement and for a period of two (2) years following the Employee's termination of employment, neither the Employee, on the one hand, nor the Company formally, on the other hand, shall, directly or indirectly, with willful intent to damage the other, make, publish, issue or communicate any public statement, or statement likely to become public, that is critical of or damaging to the other and, in the case of communications by the Employee, any of the Company's officers, directors, employees, agents or contractors. The foregoing shall not be violated by truthful responses to legal process or governmental inquiry or by the Employee in carrying out Employee's duties in accordance with this Agreement.

8. <u>Reformation; Severability</u>. If it is determined by a court of competent jurisdiction in any state that any restriction in this Agreement is excessive in duration or scope or is unreasonable or unenforceable under the laws of that state, it is the intention of the parties that such restriction may be modified or amended by the court to render it enforceable to the maximum extent permitted by the law of that state. Should one or more of the provisions of this Agreement be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

9. <u>Survival of Provisions</u>.  Without effect as to the survival of other provisions of this Agreement intended to survive the termination or expiration of Employee's



employment, the obligations contained in Sections 4, 5, 6 and 7 of this Agreement shall survive the termination or expiration of this Agreement and shall be fully enforceable thereafter.

10. **Remedies**. If at any time the Employee violates to a material extent any of the covenants or agreements set forth in Agreement, the Company shall have the right to terminate all of its obligations to make further payments under this Agreement. The Employee acknowledges that the Company would be irreparably injured by a violation of Sections 4, 5, 6, or 7 and agrees that the Company shall be entitled to an injunction restraining the Employee from any actual or threatened breach of said Sections or to any other appropriate equitable remedy without any bond or other security being required. The aforementioned equitable relief shall be in addition to any legal remedies, monetary damages or other available forms of relief.

11. **Employment at Will and Termination**. Employee's employment by the Company shall be on an "at-will" basis. This means that employment with the Company is not for a fixed term or definite period and may be terminated at the will of either party, with or without cause, and without prior notice. Employee should provide the Company with three (3) weeks written notice.

12. **Notices**. Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the Company at its principal executive offices or to the Employee at the last address filed by Employee in writing with the Company, as the case may be.

13. **Assignment; Successors**. This Agreement is personal in nature and Employee may not assign this Agreement or any part hereof. Any purported assignment by Employee shall be null and void. This Agreement shall be binding upon, and inure to the benefit of, the Company and its successors and assigns. The Company may assign this Agreement to any subsidiary or affiliate or to any successor or assign, whether direct or indirect, by purchase, merger, consolidation or otherwise, to all or substantially all of the business or assets of the Company.

14. **Successors**. This Agreement shall be binding upon, and inure to the benefit of, the Company and its successors and assigns and upon any person acquiring, whether by merger, consolidation, purchase of assets or otherwise, all or substantially all of the Company's assets and business.

15. **Applicable Law**. The validity, interpretation, performance and enforcement of this Agreement shall be governed by the laws of the State of New York without regard to the conflicts of laws principles thereof (other than Section 5-1401 of the New York General Obligations Law). Each party hereby irrevocably and unconditionally consents to the exclusive jurisdiction of the courts of the State of New York in the City of New York, or the federal courts in that city, for any action, suit or proceeding arising out of or related hereto. The parties hereby waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

16. **Entire Agreement**. This Agreement, including the Offer Letter dated August 28, 2017, sets forth the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, whether written or oral, with respect to such subject matter.



17. <u>Waiver; Modification</u>. No waiver by any party of any breach of this Agreement or failure of any party to take action to enforce or assert any right or remedy hereunder shall be deemed a waiver of any prior, concurrent or subsequent breach. No waiver of any rights under or amendment or modification to this Agreement shall be effective unless assented to in writing by both parties.

18. <u>Acknowledgements</u>. Employee acknowledges that (i) Employee has been provided the opportunity to discuss the terms of this Agreement with counsel of Employee's choosing, (ii) Employee fully reviewed this Agreement prior to its execution and fully understands the terms thereof,(iii) this Agreement shall not be interpreted for or against either party on the premise that the party was or was not the drafter of the Agreement, and (iv) the headings in this Agreement are for convenience or reference only and shall not affect the meaning of any of the provisions of this Agreement.

19. <u>Counterparts</u>. The Agreement may be executed in any number of counterparts, any one of which shall be deemed to be an original and all of which together shall constitute one and the same agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

EMPLOYEE:

_____
Valentia Villetti


GUIDEPOINT GLOBAL, LLC

By: _____
Name: Albert Sebag
Title: CEO