UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

VALENTIA VILLETTI and FAIZA JIBRIL, M.D.,   Case No.: 1:18-cv-10200-MKV-KNF

                     Plaintiffs,

   - against -

GUIDEPOINT GLOBAL, LLC,

                     Defendant.

------------------------------------------------------------------ X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### GORDON REES SCULLY MANSUKHANI, LLP
*ATTORNEYS FOR DEFENDANT*
*GUIDEPOINT GLOBAL, LLC*
ONE BATTERY PARK PLAZA
New York, New York 10004
PHONE: (212) 269-5500
FAX: (212) 269-5505

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 1

      A.      Villetti's Employment............................................................................................ 1

      B.      Jibril's Prospective Employment .......................................................................... 2

ARGUMENT .................................................................................................................................. 3

POINT I:      VILLETTI'S CLAIM OF GENDER DISCRIMINATION FAILS AS A MATTER OF LAW ................................................................................................ 3

POINT II:     JIBRIL'S FAILURE TO HIRE CLAIM FAILS AS A MATTER OF LAW ......... 9

POINT III:    VILLETTI'S RETALIATION CLAIM FAILS AS A MATTER OF LAW ........ 10

POINT IV:    PLAINTIFFS' CLAIMS FOR DAMAGES FAIL AS A MATTER OF LAW.... 11

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Baity v. Kralik*,
 51 F. Supp. 3d 414 (S.D.N.Y. 2014) ................................................................................... 4

*Bennett v. Health Mgmt. Sys., Inc.*,
 92 A.D.3d 29 (1st Dep't 2011) ............................................................................................ 4

*Brightman v. Prison Health Serv., Inc.*,
 108 A.D.3d 739 (2d Dep't 2013) ....................................................................................... 10

*Colon v. Trump Int'l Hotel & Tower*,
 No. 10 CV. 4794 (JGK), 2011 U.S. Dist. LEXIS 140606 (S.D.N.Y. Dec. 6, 2011) .................. 3

*Dickerson v. Health Mgmt. Corp. of Am.*
 21 A.D.3d 326 (1st Dep't 2005) .......................................................................................... 5

*Gioia v. Forbes Media LLC*,
 501 Fed. Appx. 52 (2d Cir. 2012) ....................................................................................... 4

*Grady v. Affiliated Cent., Inc.*,
 130 F.3d 553 (2d Cir. 1997),
 *cert. denied*, 525 U.S. 936 (1998) ...................................................................................... 4

*Graham v. Long Island R.R.*
 230 F.3d 34 (2d Cir 2000) ................................................................................................... 5

*James v. New York Racing Ass'n*
 233 F.3d 149 (2d Cir. 2000) ................................................................................................ 4

*Kirkland v. Cablevision Sys.*,
 760 F.3d 223 (2d Cir. 2014) ................................................................................................ 3

*McDonnell Douglas Corp. v. Green*,
 411 U.S. 792 (1973) ..................................................................................................... 3, 10

*Melman v. Montefiore Med. Ctr.*,
 98 A.D.3d 107 (1st Dep't 2012) .......................................................................................... 3

*O'Connor v. Bank of New York*
 2008 N.Y. Misc. LEXIS 8338 (N.Y. Sup. Ct. Feb. 28, 2008) .............................................. 5

*Renaud v. Fed. Express Corp.*
 10 Civ. 4261 (LB), 2012 U.S. Dist. LEXIS 1452 (E.D.N.Y. Jan. 6, 2012) .......................... 6

*Shah v. Wilco Sys., Inc.*
  27 A.D.3d 169 (1st Dep't 2005) .................................................................................... 6

*Soloviev v. Goldstein*,
  104 F. Supp. 3d 232 (E.D.N.Y. 2015) ......................................................................... 9

*Sotomayor v. City of New York*,
  862 F. Supp. 2d 226 (E.D.N.Y. 2012) ......................................................................... 4

*Vivenzio v. City of Syracuse*,
  611 F.3d 98 (2d Cir. 2010) .......................................................................................... 9

*Williams v. Regus Mgmt. Group, LLC*,
  836 F. Supp. 2d 159 (S.D.N.Y. 2011) ......................................................................... 4

**Statutes**

42 U.S.C. § 2000e ................................................................................................................ 1

Administrative Code of the City of New York, § 8-101 ..................................................... 1

N.Y. Exec. Law § 296(1)(a) ................................................................................................. 9

N.Y. Executive Law § 290 ................................................................................................... 1

**Rules**

Local Rule 56.1 .................................................................................................................... 1

**PRELIMINARY STATEMENT**

Plaintiffs Valentia Villetti ("Villetti") and Faiza Jibril, M.D. ("Jibril") (collectively "Plaintiffs") bring this action pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290, *et seq.,* and the Administrative Code of the City of New York, § 8-101 *et seq.* ("NYCHRL"), alleging that defendant Guidepoint Global, LLC ("Guidepoint") engaged in unlawful employment discrimination against Plaintiffs on the basis of their gender and retaliated against Villetti for complaining about discrimination.

Guidepoint now moves for summary judgment. Guidepoint is entitled to judgment, as a matter of law, on Plaintiffs' claims because Plaintiffs have utterly failed to proffer sufficient evidence to show that Guidepoint's termination of Villetti's employment or its failure to hire Jibril was based, in any way, upon unlawful gender discrimination or unlawful retaliation. To the extent the Court should elect to exercise supplemental jurisdiction over Plaintiffs' NYSHRL or NYCHRL claims, those claims also fail as a matter of law.

**STATEMENT OF FACTS**

A.  Villetti's Employment

Villetti commenced employment with Guidepoint on or about September 11, 2017 in the position of Senior Healthcare Content Strategist. *See* Defendant's Local Rule 56.1 Statement of Material Facts ("SOF") at ¶ 2. Villetti was hired by CEO, Albert Sebag ("Sebag"). *See id.* at ¶ 5. Villetti was paid a base annual salary of $180,000.00 with the prospect of a $15,000.00 annual discretionary bonus and a $5,000.00 signing bonus. *See id.* at ¶ 3. Villetti was a member of the healthcare content team, which was expected to work together in order to effectively strategize the

1

choice of topics that clients would want and need to stay informed about the industry. *See id.* at ¶¶ 7-9. Success in Villetti's position at Guidepoint depended upon her cooperation with members of the content and logistics teams and her ability to work well with all of her colleagues. *See id.* From the onset of Villetti's employment, however, her colleagues expressed concerns about her conduct. *See id*. at ¶¶ 25-26. Specifically, complaints were made that Villetti was confrontational, uncooperative, aggressive and demeaning to her peers. *See id.*

When Villetti's supervisor, Bouker Pool ("Pool"), became aware of the complaints about Villetti, he responded that he was disappointed but not surprised. *See* Exhibit G annexed to the Declaration of David J. Grech.[1] Villetti's conduct became so unbearable for her team members that one refused to continue working with her and expressed to Human Resources that she believed many team members would quit if Villetti continued her employment with Guidepoint. *See* Exhibit H. On March 1, 2018, mere months after joining Guidepoint, Villetti made the unilateral decision, without approval, to attend an out of state meeting in Boston. *See* SOF at ¶¶ 21-24. Following an internal investigation, wherein several employees were interviewed about the functionality of the content team, Guidepoint made the decision to terminate Villetti's employment effective March 19, 2018. *See* Exhibit C.

B. <u>Jibril's Prospective Employment</u>

In January 2018, Jibril applied and interviewed for the position of Healthcare Content Analyst. *See* SOF at ¶ 74. As Guidepoint's thinking about the position evolved, it determined that the person best situated to be able to identify appropriate content would be someone with experience as either a consumer or marketer of content aimed at this client segment, specifically a

---

[1] Unless otherwise stated, all exhibits cited herein are annexed to the Declaration of David J. Grech in support of Defendant's Motion for Summary Judgment.

2

"buy-side" analyst or someone who had created content at a "sell-side" institution. *Id.* at ¶ 76. Guidepoint did not hire Jibril because she did not have either buy-side or sell-side experience. *See id.* at ¶¶ 77 and 81. Following the decision not to hire Jibril, Guidepoint hired approximately fifteen (15) individuals to create content, some of whom were women, and all of whom had either buy-side or sell-side experience. *See id.* at ¶¶ 78-81.

## ARGUMENT

### POINT I: VILLETTI'S CLAIM OF GENDER DISCRIMINATION FAILS AS A MATTER OF LAW

Discrimination claims brought pursuant to the NYCHRL are analyzed using the same three-step *McDonnell Douglas* burden-shifting framework employed for Title VII cases, albeit slightly modified at the fourth stage of the analysis. *See, Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 112-13 (1st Dep't 2012) ("[N]either the [Local Civil Rights Restoration Act of 2005] nor the City Council report thereon … sets a new framework for consideration of the sufficiency of proof of claims under the [NYCHRL] or indicated that the McDonnell Douglas framework is to be discarded"); *Colon v. Trump Int'l Hotel & Tower*, No. 10 CV. 4794 (JGK), 2011 U.S. Dist. LEXIS 140606, *19-21 (S.D.N.Y. Dec. 6, 2011).[2] The three-part burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) sets forth that a plaintiff must establish a *prima facie* case of discrimination by showing that: (1) she belongs to a protected group; (2) she was qualified for her position; (3) her employer took an adverse action against her; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See, Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).

---

[2] Should the Court decide to exercise supplemental jurisdiction over Plaintiffs' claims, Defendant analyzes Plaintiffs' discrimination claims under the more plaintiff-favorable NYCHRL standard.

3

In order to satisfy the fourth element of a *prima facie* case under the NYCHRL, plaintiff must offer sufficient evidence establishing that she was treated differently than other similarly-situated individuals who are not members of the same protected class. *See, Williams v. Regus Mgmt. Group, LLC*, 836 F. Supp. 2d 159, 170-71 (S.D.N.Y. 2011); *See also, Baity v. Kralik,* 51 F. Supp. 3d 414, 445 (S.D.N.Y. 2014); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012).

Once Guidepoint proffers evidence of a legitimate, non-discriminatory reason for the challenged action(s), Villetti then has the burden of proof, through presented, sufficient, and admissible evidence, to convince a rational factfinder to conclude either that: (a) Guidepoint's explanation is merely pretextual or (b) intentional discrimination was a "motivating factor" behind the challenged employment action(s). *See, e.g., Gioia v. Forbes Media LLC*, 501 Fed. Appx. 52, 55-56 (2d Cir. 2012) (*citing Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 33 (1st Dep't 2011)).

Here, Villetti is simply unable to establish that Guidepoint discriminated against her on the basis of her gender. Assuming *arguendo*, that Villetti had established the first three elements of her *prima facie* case, Villetti cannot establish the fourth element of her *prima facie* case – that is, that her termination occurred under circumstances giving rise to an inference of discrimination.

First, Sebag, CEO of Guidepoint, who made the decision to hire Villetti, also made the decision to terminate Villetti just six (6) months later. *See* SOF at ¶¶ 2 and 5. It is well-settled that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [that person] an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent., Inc*., 130 F.3d 553, 560 (2d Cir. 1997), *cert. denied*, 525 U.S. 936 (1998); *See*, *James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000) (noting that it is "difficult to impute bias against plaintiff's protected class where the actor

4

who made the adverse employment decision against plaintiff also made a recent favorable employment decision regarding plaintiff").

This principle, which is commonly referred to as the "same actor" inference, also applies to discrimination claims asserted under the NYCHRL. *See*, *e,g.*, *Dickerson v. Health Mgmt. Corp. of Am.*, 21 A.D.3d 326, 329 (1st Dep't 2005) (noting that the same individuals who hired plaintiff made the decision to terminate him, which "strongly suggest[s] that invidious discrimination was unlikely"); *See also, O'Connor v. Bank of New York*, 2008 N.Y. Misc. LEXIS 8338, at *23 (N.Y. Sup. Ct. Feb. 28, 2008) ("any inference of gender discrimination is further belied by the fact that the same actor [ ] made all of the critical decisions regarding [plaintiff's] employment … [including] approving plaintiff's hiring … and ultimately deciding to terminate her").

Likewise, here, any inference of gender discrimination is belied by the fact that the same actor who hired Villetti also made the decision to terminate her employment. It strains credulity to believe that Guidepoint would have hired Villetti, knowing her gender, trained her, made every effort to integrate her successfully into the organization, only to terminate her six (6) months later based on her gender.

Second, Villetti fails to allege any evidence that could support an inference that the decision to terminate her employment was motivated by discriminatory *animus*. Rather, Villetti relies entirely upon her own self-serving, conclusory, and unspecified allegations. *See* SOF at Section D. Villetti's allegations that Guidepoint took adverse action against her female predecessor and two (2) female colleagues is unavailing and unsupported by any facts in the record. *See id.* To establish an inference of discrimination based upon a showing of disparate treatment, plaintiff "must show that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir 2000) (citation

5

omitted); *See, Shah v. Wilco Sys., Inc.*, 27 A.D.3d 169, 177 (1st Dep't 2005) ("The individuals being compared must be similarly situated in all material respects") (internal quotations omitted). Employees who hold different positions with different responsibilities cannot be deemed to be similarly situated. *See, e.g., Renaud v. Fed. Express Corp.*, 10 Civ. 4261 (LB), 2012 U.S. Dist. LEXIS 1452, at *21 (E.D.N.Y. Jan. 6, 2012).

Here, Villetti fails to identify any male employees, who held the same title and had the same responsibilities, as the female employees she identified that were demoted and/or terminated. The three (3) female employees Villetti identified as those who purportedly support her claim that Guidepoint had a pattern of discriminating against women by taking adverse action against them are: Ashlee Dunston ("Dunston"), Jessica Kagin-Tropea ("Kagin"), and a woman named "Alyssa." *See* SOF at ¶¶ 29-34. This, however, is nothing more than mere speculation conjured up by Villetti in an attempt to support her meritless claim. Villetti claims that she herself, a woman, *replaced* Dunston. *See id.* at ¶ 34. Thus, the allegation that Guidepoint terminated Dunston's employment because she is a woman is belied by the fact that Guidepoint hired a woman (Villetti) to replace her.

Villetti offers no evidence as to why the demotion of Kagin was discriminatory. As for Alyssa's purported demotion, although Villetti desperately tries to use this woman (about whom she knew very few details) as evidence to support her case, Villetti testified that Alyssa told her that she believed her role changed when she returned from maternity leave making it more difficult for her to care for her child. *See* Transcript of Villetti's November 14, 2019 Deposition Transcript, Exhibit E at 183:7-16. According to Villetti herself, Alyssa made no mention of feeling as if she were discriminated against or treated differently because of her gender. Villetti did not offer any

other statement made by Alyssa, or anyone else for that matter, to indicate that Alyssa had been or even believed that she had been discriminated against by Guidepoint on the basis of her gender.

Moreover, Villetti is comparing these three (3) other female employees to unidentified male employees, not herself. As discussed further below, Villetti was terminated due to a combination of: (1) her job performance, (2) her conduct toward her co-workers and supervisors, and (3) insubordination. *See* SOF at Section C. Thus, Villetti has failed to and cannot identify any similarly situated employees who engaged in similar conduct as she did but were not terminated.

Additionally, Villetti asserts that Guidepoint's decision not to hire Jibril is evidence of a pattern of gender discrimination at Guidepoint. The reason Guidepoint did not hire Jibril is set forth in Point II herein. The most glaring fact that undercuts this unsupported allegation, however, is that several women were hired to fill the position that Guidepoint did not offer to Jibril. *See id.* at ¶¶ 78-80.

Separately, Villetti was asked who she believed were the offenders of gender discrimination against her, and Villetti replied: Rutwick Ghodadra ("Ghodadra") and Sebag. When asked what conduct led her to believe that Ghodadra discriminated against her on the basis of her gender, Villetti could only respond that Ghodadra wanted his opinions heard by team members and would dictate what the teams did. *See id.* at ¶ 17. Notably, there were two men on the events and logistics teams, which undercuts Villetti's argument that Ghodadra treated women differently. *See id.* at ¶ 45. Villetti's subjective annoyance at Ghodadra's involvement in the content team's activities at Guidepoint does not constitute discrimination. To the contrary, Ghodadra treated both male and female employees at Guidepoint the same, and his conduct was consistent. *See id.* at ¶¶ 44-46. There is no evidence that Ghodadra treated women differently or more harshly.

As for Sebag, Villetti testified that she did not believe he treated women differently, and the only example of "gender discrimination" Villetti purportedly suffered was Sebag's (her CEO) telephoning her when he learned that she had left Guidepoint's New York City office for an unauthorized trip to Boston. *See id.* at ¶ 42. Villetti was unable to testify that the way Sebag spoke to her on the call at issue was any different than the way he spoke to male employees. *See id.* at 39. In fact, Villetti testified that another Guidepoint employee, Priscilla Gulino ("Gulino"), informed Villetti that the manner in which Sebag handled the Boston incident with Villetti was consistent with how he handled other matters at Guidepoint. *See id.* at ¶ 43. Moreover, Sebag was not only angry at Villetti for taking an unauthorized trip to Boston, he was also angry at her supervisor, Pool, a man. *See id.* at ¶ 47. Finally, Villetti testified that she would return to work with both Sebag and Ghodadra. *See id.* at ¶¶ 71-73. It defies logic that Villetti would want to return to a place of employment she now alleges is discriminatory and into the same environment she now claims is made "toxic" by Ghodadra and Sebag.

Even assuming, *arguendo*, that Villetti could establish a *prima facie* case of discrimination (which she cannot), Guidepoint had completely legitimate, non-discriminatory reasons for terminating her employment, and Villetti has absolutely no evidence to support an argument that Guidepoint's stated reasons are mere pretext for discrimination. Villetti was a member of the healthcare content team, which was expected to work together in order to effectively strategize the choice of topics that clients would want and need to stay informed about the industry. *See id*. at ¶¶ 7-9 and 14. Villetti's success in her position at Guidepoint depended upon her ability to cooperate with the members of the content and logistics teams and her ability to work well with all of her colleagues. *See id.* From the onset of Villetti's employment, however, her colleagues expressed concerns about her conduct. *See* Exhibits G and H. Specifically, complaints were made that Villetti

was confrontational and demeaning to her peers. *See id.* Villetti's colleagues also complained about her frequent absences and performance deficiencies. *See id.* When Kagin made her first complaint about Villetti to Pool, he responded that he was not surprised. *See* Exhibit G.

Villetti's conduct became so unbearable for her team members that Kagin refused to continue working with Villetti and expressed to Human Resources that she believed many team members would quit if Villetti continued her employment with Guidepoint. *See* Exhibit H. Following an internal investigation wherein several employees were interviewed about how the group was functioning, coupled with Villetti's insubordinate action of unilaterally deciding to attend an out of state meeting without the CEO's approval, Guidepoint made the decision to terminate Villetti's employment effective March 19, 2018. *See* Exhibit C.

### POINT II: JIBRIL'S FAILURE TO HIRE CLAIM FAILS AS A MATTER OF LAW

In claims for failure to hire, "a plaintiff complaining of a discriminatory failure to hire must first make out a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010). Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice" for an employer to "refuse to hire" an individual on the basis of race, national origin or sex. N.Y. Exec. Law § 296(1)(a).

Because Jibril only alleges that a man was one of the individuals hired for the position that she sought, her allegations do not sufficiently allege that she was not hired because of gender discrimination. *See Soloviev v. Goldstein,* 104 F. Supp. 3d 232, 239 (E.D.N.Y. 2015) (dismissing NYCHRL claim where plaintiff failed to allege that termination was caused by discriminatory motive). Moreover, Jibril's allegations are easily refuted as Guidepoint can show that it hired

9

several women to fulfill the duties of the position and that all the individuals hired over Jibril possessed the requisite experience and knowledge of Guidepoint's client base. *See* SOF at Section G. Specifically, Jibril lacked buy and/or sell side experience, which was a preferred requirement of the role she sought. *See* SOF at ¶¶ 76-77 and 81. Jibril lacked this background and for that reason was not suitable for the position.

### POINT III: VILLETTI'S RETALIATION CLAIM FAILS AS A MATTER OF LAW

Retaliation claims under the NYCHRL are analyzed under the same three step *McDonnell Dougla*s burden-shifting framework as discrimination claims under New York State and federal law. Only the elements of the *prima facie* case differ. To establish a *prima facie* case of retaliation under the NYCHRL, Villetti must show: (1) she engaged in protected activity, (2) Guidepoint was aware that she participated in such activity, (3) Guidepoint engaged in conduct which was reasonably likely to deter a person from engaging in such protected activity, and (4) there is a causal connection between the protected activity and the adverse action. *See Brightman v. Prison Health Serv., Inc.,* 108 A.D.3d 739, 740 (2d Dep't 2013).

As an initial matter, Villetti arguably cannot even establish the first element of her *prima facie* case. In order to constitute "protected activity," the action in question must be taken to protest or oppose statutorily-prohibited discrimination under the NYCHRL. Here, Villetti characterizes an email she drafted on March 12, 2018 as "protected activity" for which she was retaliated against. The email, however, fails to even specify any protected category upon which a claim of retaliation could be based. *See* Exhibit I. In this alleged "protected email," Villetti complains about Ghodadra's and Sebag's behaviors, which she deemed to be hostile. *See id.* Villetti complained about Sebag's contacting her while she was in Boston because she did not believe she reported to Sebag, or that she required his approval to travel (despite Sebag's being Guidepoint's CEO). *See*

SOF at ¶ 50. Nowhere in Villetti's email does she indicate that she believed that either Ghodadra or Sebag were discriminating against her or treating her differently because of her gender. In fact, the record is quite clear, that Ghodadra's and Sebag's conduct was consistent to all employees, regardless of gender. *See* SOF at ¶¶ 19; 41-44. Villetti testified that at the time she wrote her March 12, 2018 email, she was concerned by Ghodadra appearing to take on a management role on her team, not because she felt he was discriminating against her based upon her gender. *See* SOF at ¶ 60. This is further solidified by the fact that Pool, a man, made similar complaints. *See* Exhibit J.

Villetti cannot establish a causal connection between her March 12, 2018 email and her termination because the decision to terminate her employment was made after a series of complaints about Villetti from her colleagues. *See* Exhibits G and H. At the conclusion of an investigation into the content team's functionality, it became readily apparent to Guidepoint that Villetti's continued employment was untenable, especially after the recent incident of Villetti's travelling to Boston without approval. The interviews of the members of the content team, including her supervisor, all yielded the same result – that is, Villetti's performance and conduct were hindering the success of the department and preventing its progression. *See id.* Additionally, Villetti acknowledged receipt of the Guidepoint Employee Handbook, which instructs any employee who believes he/she is suffering discrimination or harassment to complete and submit the designated complaint form. *See* Exhibit P. At no point during Villetti's six (6) month employment, did she utilize the policy set forth in Guidepoint's Employee Handbook governing complaints about discrimination. *See* SOF at ¶¶ 100-101.

## POINT IV: PLAINTIFFS' CLAIMS FOR DAMAGES FAIL AS A MATTER OF LAW

Villetti testified that she has not made any effort to seek subsequent employment since her termination from Guidepoint, and therefore she has utterly failed to meet her obligation to mitigate

11

her damages. *See* SOF at Section F. Rather, she has elected to devote her energies to a startup company, which she founded along with two other individuals in 2016. *See id.* at ¶ 66. Thus, even if Villetti were able to establish liability on the part of Guidepoint, which she cannot, she is not entitled to any economic damages.

As for Jibril, she testified that in her current role as Vice President of The Expert Institute, she is paid a $140,000.00 base salary and that through commissions, she can earn a total of $330,000.00 per year, which far surpasses the compensation she would have received had she been hired by Guidepoint. *See id.* at ¶¶ 86-90. Thus, even if Jibril were able to establish liability on the part of Guidepoint, which she cannot, she has not suffered any economic damages. *See id.*

Moreover, Plaintiffs have waived any claim to compensatory damages for emotional distress. For example, during the course of discovery, Plaintiffs refused to disclose certain materials to Guidepoint, proffering the explanation that "[P]laintiffs are not seeking damages for their mental and emotional distress." *See id.* at Section H.

## **CONCLUSION**

For the foregoing reasons, Guidepoint respectfully requests that this Court grant Guidepoint's motion for summary judgment in its entirety and such other and further relief as this Court deems just and proper.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP


By: /s/ *David Grech*
    David J. Grech, Esq.
    Brittany L. Primavera, Esq.
    *Attorneys for Defendant*
    *Guidepoint Global, LLC*
    One Battery Park Plaza, 28th Floor
    New York, New York 10004
    Phone: (212) 269-5500
    Fax: (212) 269-5505