UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

VALENTIA VILLETTI and FAIZA JIBRIL, M.D.,    Case No.: 1:18-cv-10200-MKV-KNF

                                Plaintiffs,

    - against -

GUIDEPOINT GLOBAL, LLC,

                                Defendant.

------------------------------------------------------------------ X

---

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
GUIDEPOINT GLOBAL LLC'S MOTION FOR SUMMARY JUDGMENT**

---

**GORDON REES SCULLY MANSUKHANI, LLP**
*ATTORNEYS FOR DEFENDANT*
*GUIDEPOINT GLOBAL, LLC*
ONE BATTERY PARK PLAZA
New York, New York 10004
PHONE: (212) 269-5500
FAX:   (212) 269-5505

# **TABLE OF CONTENTS**

                                                                                 **Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

      I.      There Is No Evidence To Support Plaintiffs' Claims That They Suffered Adverse Employment Actions As A Result Of Their Gender. .............................. 2

      II.     Villetti's Retaliation Claim Must be Summarily Dismissed As She Failed To Provide Legal Or Factual Support Necessary To Sustain The Claim. .............. 5

      III.    Plaintiffs Have Suffered No Recoverable Damages. ............................................. 5

CONCLUSION ............................................................................................................................... 6

# **TABLE OF AUTHORITIES**

**Cases**

*Dister v. Cont'l Grp., Inc.*,
   859 F.2d 1108 (2d Cir. 1988) .................................................................................................. 3

*Miller v. Swissre Holding, Inc.*,
   771 F. Supp. 56 (S.D.N.Y. 1991) ............................................................................................ 5

*Scaria v. Rubin*,
   117 F.3d 652 (2d Cir. 1997) .................................................................................................... 4

*Tex. Dep't of Cmty. Affairs v. Burdine*,
   450 U.S. 248, 101 S. Ct. 1089 (1981)...................................................................................... 3

## PRELIMINARY STATEMENT

Plaintiffs' opposition makes one thing clear: Plaintiffs have no viable claim against Guidepoint Global.[1] This is evident from both the absence of their evidence and the weakness of argument in opposition, much of which fails to address Guidepoint Global's arguments in support of summary judgment at all.

Plaintiff Valentia Villetti ("Villetti") has failed to set forth *any* facts in her opposition to support her gender discrimination claim. Villetti was terminated after she took it upon herself to attend an authorized trip out of state. Albert Sebag ("Sebag"), the Chief Executive Officer of Defendant Guidepoint Global, LLC ("Guidepoint Global"), not only disciplined Villetti after finding out about the trip but also her male supervisor, Bouker Pool ("Pool"). Villetti is unable to overcome the fact that the decision to terminate her brief tenure with Guidepoint Global was made after this unauthorized trip and after Guidepoint Global received multiple complaints from her colleagues about Villetti's performance, attitude, and attendance. One of the employees, who complained about Villetti, is the same woman Villetti purports to use to support her discrimination claim.

Similarly, the only "evidence" relied upon by Plaintiff Faiza Jibril, M.D. ("Jibril") is Villetti's testimony that Sebag wanted a "hedge fund guy" for the position Jibril sought. Villetti, however, testified that she never heard Sebag use that phrase. Instead, Guidepoint Global hired several women to fill the role Jibril applied for, all with buy-side and/or sell-side experience, a requirement of the position.

Villetti's retaliation claim must also be summarily dismissed as she did not engage in any protected activity. Villetti's March 12, 2018 email does not include complaints of discrimination

---

[1] All terms used in this reply memorandum of law have the same definitions as provided in Guidepoint Global's initial memorandum of law in support of its motion for summary judgment.

1

of any kind. Rather, Villetti lodged a complaint because of her dissatisfaction with the involvement of a consultant, Rutwick Ghodadra ("Ghodadra"), with her team. Villetti did not want to listen to this consultant's opinions and was incapable of working as a team player in her short time with Guidepoint Global. Thus, because neither Villetti nor Jibril set forth actionable claims for discrimination or retaliation, their claims must be dismissed.

## ARGUMENT

**I.   There Is No Evidence To Support Plaintiffs' Claims That They Suffered Adverse Employment Actions As A Result Of Their Gender.**

The only support *Jibril* sets forth for her claim of gender discrimination is *Villetti's* story that Sebag wanted a "hedge fund guy" to fill the Healthcare Content Strategist position Jibril sought in 2018. Villetti, however, testified that she never heard Sebag use this term. Villetti simply testified that Pool informed her that Jibril's lack of hedge fund experience was the reason Sebag did not want to extend the offer. *See* Exhibit D at 67:11-16. This fact is undisputed. Villetti never testified that Sebag used the word "guy" and she further testified that she never discussed Jibril or her candidacy with Sebag. *See id.* at 67:6-10. Thus, because there is no evidence in the record that Sebag referenced Jibril's gender or the gender of the person assuming the role, this argument in Plaintiffs' opposition must be disregarded.

Rather, it is an undisputed fact that it was preferred that the employee assuming the Healthcare Content Strategist position have either buy-side or sell-side experience. On this issue, Villetti, herself, testified:

> Q. Was either one of those buy-side or sell-side experience a requirement for the position you were looking to put Dr. Jibril in?
>
> A. I believe it was preferred, but not required.
>
> Q. Was there a job description for the position that Dr. Jibril was going to fill?

2

>   A. I believe so.
>
>   Q. Did you have a role in drafting the job description?
>
>   A. I believe so.
>
>   Q. And it's your recollection that it was a preference for either buy-side or sell-side experience?
>
>   A. Yes, a preference, not a requirement.

*See id.* at 148:16-149:11.

Jibril also acknowledged that buy-side and sell-side experience would be relevant to her application for the Healthcare Content Strategist position and testified:

>   A. I was told that it was not a requirement, which is why they had reached out me, but it came up because I said that my only concern in the role, the only thing that would limit me was the fact that I did not have buy side or sell side experience.

*See* Exhibit L at 29:3-9.

To further support the fact that Guidepoint Global did not ultimately hire Jibril because of her lack of financial experience, it is undisputed that fifteen (15) individuals, including men and women, were hired for the position sought by Jibril. *See* Guidepoint Global's Local Rule 56.1 Statement of Facts ("SOF") at ¶¶ 80 and 81; *see also,* Villetti's testimony when asked whether the multiple hires had buy-side or sell-side experience:

>   Q. Did they have buy-side or sell-side experience?
>
>   A. I believe so, but I'm not sure.

*See* Exhibit D at 150:2-4.

"It is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108 (2d Cir. 1988). *See, Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259, 101 S. Ct. 1089 (1981)

3

("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability. . . ."). Because there is no evidence that Jibril's gender played any role in Guidepoint Global's decision not to hire her and because several women were offered the role Jibril was denied, Jibril's discrimination claim must fail.

Villetti's gender discrimination similarly fails. The record is utterly devoid of even one fact that would allow a rational fact finder to conclude that Villetti's gender played any role in her termination. While Villetti may hold herself with the highest esteem, her conduct at Guidepoint Global proved otherwise. Villetti cannot overcome the fact that her female colleague, among others, complained about her performance, her attendance, and the way she treated her peers. *See* SOF at ¶¶ 25 and 26. Perhaps most telling, is that the female that Villetti used as purported support for her discrimination claim, Jessica Kagin-Tropea, was the one who complained about Villetti.

Additionally, while Villetti might have believed she could make employment decisions without the authority of Guidepoint Global's CEO, that is not enough for her to defeat the fact that she was not permitted to go on a trip to Boston without approval but did it anyway. *See id.* at ¶ 21. It was not only Villetti, who was reprimanded for this insubordinate act, her male supervisor, Pool, was also chastised by Sebag. *See id.* at ¶ 47. Neither Villetti nor Jibril may sit as a "super-personnel" department of Guidepoint Global and substitute her own judgment for the judgment of the decision-makers at Guidepoint Global. *See, Scaria v. Rubin*, 117 F.3d 652 (2d Cir. 1997). Villetti does not dispute that she travelled to Boston without Sebag's permission. The documents clearly show that Sebag had not provided her with authorization, but she unilaterally chose to do it anyway (as a new employee). *See id.* at ¶ 21.

Further, Villetti demeaned her colleagues, maintained poor attendance, and did not perform well during the short time she was employed by Guidepoint Global. *See id.* at ¶¶ 25 and 26.

4

Because Villetti cannot show that Guidepoint Global's reasons for her termination are not implausible and because she cannot disprove that Guidepoint Global's decision was a legitimate one, summary judgment must be granted, and Villetti's discrimination claim be dismissed.

### II. Villetti's Retaliation Claim Must be Summarily Dismissed As She Failed To Provide Legal Or Factual Support Necessary To Sustain The Claim.

Villetti has failed to set forth a cognizable claim of retaliation. In opposition, Villetti failed to set forth participation in a protected activity and an adverse employment action that flowed directly from engagement in the protected activity. Nowhere in Villetti's March 12, 2018 email does she complain about discrimination. *See* Exhibit I. Rather, Villetti complains about Ghodadra's involvement with her team and Sebag's reprimand following her unauthorized trip to Boston. None of the content of this email constitutes protected activity.

Putting aside the fact Villetti fails to state a *prima facie* case for retaliation, as stated above, Guidepoint Global has set forth a legitimate basis for her termination, and her retaliation claim must be dismissed.

### III. Plaintiffs Have Suffered No Recoverable Damages.

It is undisputed that Villetti failed to mitigate her damages. Villetti herself testified that she did not seek new employment when she was terminated from Guidepoint Global. *See* SOF at ¶ 65. Villetti cites to a non-binding 8th Circuit decision in purported support of her claim that furthering her own nutrition business qualifies as sufficient mitigation. This is simply false in our jurisdiction. It is well-established that plaintiffs are disallowed from collecting back pay where they made no effort to seek comparable employment and chose instead to start their own business. *See Miller v. Swissre Holding, Inc.*, 771 F. Supp. 56, 60-61 (S.D.N.Y. 1991). Had Villetti's attempts to secure

comparable employment proven futile, perhaps then starting a new/continuing an existing business venture would have been a reasonable means to mitigate her damages, but she did not even make the attempt.

Villetti, however, has testified that she never sought comparable employment despite the fact that she easily obtained consulting work in her field at a competitive compensation. *See* SOF at ¶ ¶ 65-70. Thus, the record shows that the opportunities were there and were ample, but Villetti chose not to seek them out and should therefore be awarded no back pay damages, even if liability were to be found, which Guidepoint Global obviously contests.

As to Jibril's damages, her testimony speaks for itself. *See id.* at ¶ ¶ 89 and 90. Neither Plaintiff is seeking emotional distress damages, and therefore, there are none for a fact finder to determine. Jibril's self-serving sampling, in her opposition, of periods during her employment, which she has maintained throughout, in order to construct "backpay damages" in what amounts to a "failure to hire" claim is both unavailing and inapposite. Therefore, even in the event a claim were to go before a jury, neither Plaintiff has suffered any recoverable damages and would be awarded nothing.

## CONCLUSION

For the foregoing reasons, Guidepoint Global respectfully requests that this Court grant its motion for summary judgment in its entirety and such other and further relief as this Court deems just and proper.

    Respectfully submitted,

    GORDON REES
    SCULLY MANSUKHANI, LLP

    By: */s/*

    David J. Grech, Esq.
    Brittany L. Primavera, Esq.
*Attorneys for Defendant*
*Guidepoint Global, LLC*
One Battery Park Plaza, 28th Floor
New York, New York 10004
Phone: (212) 269-5500
Fax: (212) 269-5505