```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/11/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VALENTIA VILLETTI and FAIZA JIBRIL, M.D.,

                Plaintiffs,

               -against-

GUIDEPOINT GLOBAL, LLC,

                Defendant.

1:18-cv-10200-MKV

ORDER GRANTING
MOTION FOR
SUMMARY JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

This case was reassigned to me on February 5, 2020 and comes before the Court on a motion for summary judgment. On November 5, 2018, Plaintiffs Valentia Villetti and Faiza Jibril filed a Complaint [ECF No. 4] alleging violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), and the Administrative Code of the City of New York, § 8-101 *et seq.* ("NYCHRL"). Specifically, Plaintiffs allege unlawful employment discrimination on the basis of gender and retaliation for complaining about the alleged discrimination.

      At the close of discovery, Defendant Guidepoint filed a motion for summary judgment (Guidepoint Mot. [ECF No. 59]), along with a supporting memorandum (Guidepoint Mem. [ECF No. 62]) and an accompanying Statement of Material Facts under Local Civil Rule 56.1 (Guidepoint 56.1 [ECF No. 60]). Plaintiffs Villetti and Jibril filed an opposition (Pls.' Mem. [ECF No. 63]), and a responding 56.1 Statement (Pls.' 56.1 [ECF No. 67]).[1] Guidepoint subsequently filed a reply (Guidepoint Reply [ECF No. 69]). After reviewing the parties' submissions, the Court concludes that Guidepoint is entitled to summary judgment dismissing Plaintiffs' claims.

---

[1] Plaintiffs' Statement of Material Facts under Local Rule 56.1 restates in full the facts stated in Defendant's 56.1 Statement and then either admits or denies each and. Thus, the Court relies on Plaintiffs' admissions in resolving this Motion.

1

Therefore, Guidepoint's motion for summary judgment is GRANTED and the Complaint is dismissed in its entirety with prejudice.

## BACKGROUND

As it must, the Court views the facts in the light most favorable to Villetti and Jibril, the parties opposing summary judgment. This matter arises from alleged sex-based discrimination and retaliation for reporting the alleged sex-based discrimination. Compl. ¶ 1.

### A. Villetti's Employment with Guidepoint and Beyond

Starting in September 2017, Villetti worked for Guidepoint as a Senior Healthcare Content Strategist. Compl. ¶ 7; Pls.' 56.1 ¶ 2. In that role, Villetti "led in-person round tables, moderated conference calls, read industry journals, communicated with clients, and hosted events in various cities." Villetti Decl. [ECF No. 66] ¶ 2. By her measure, she was a good employee and satisfactorily performed the tasks assigned to her. Villetti Decl. ¶¶ 4-6. Guidepoint paints a different picture.

According to Guidepoint, Villetti was disliked by her co-workers. Villetti admits that she "engaged in multiple arguments" with a Guidepoint consultant, Pls.' 56.1 ¶ 16, and at least one co-worker complained about Villetti's behavior and work to Human Resources. Pls.' 56.1 ¶¶ 25-26. Then, in March 2018, Villetti attended an out-of-state conference held in Boston, Massachusetts by herself. Pls.' 56.1 ¶ 21. The parties dispute whether Villetti needed prior approval or authorization to travel. *See* Pls.' 56.1 ¶ 21. What is clear is that once Albert Sebag, Guidepoint's Chief Executive Officer, learned of the trip to Boston, he requested that she return immediately and expressed concern that he was not informed or aware that she would be attending the conference. Pls.' 56.1 ¶¶ 23-34. Upon her return, Villetti was told that she would be focusing on

2

teleconferences rather than in-person events.  Pls.' 56.1 ¶ 27; Grech Decl. [ECF No. 61] Ex. F, at 1.

After her return from Boston, Villetti sent an e-mail to Human Resources that Sebag's interactions with her while she was in Boston, and the subsequent instruction to perform a teleconference-only role, was hostile behavior.  Pls.' 56.1 ¶¶ 48-49; Grech Decl. Ex. I, at 2.  Villetti included in the e-mail complaints about interactions with consultant Rutwick Ghodadra.  Pls.' 56.1 ¶¶ 16, 49.  Villetti stated she thought Ghodadra created a toxic workplace by seeking to micromanage Villetti's team and contact them while out of office.  Pls.' 56.1 ¶ 44.  Less than a year after she started in her role, Villetti was terminated from her position as Senior Healthcare Content Strategist.  Pls.' 56.1 ¶ 2.

**B. Jibril's Prospective Employment with Guidepoint**

Jibril's contact with Guidepoint is less involved.  In January 2018, Jibril applied and interviewed for the position of Healthcare Content Analyst.  Pls.' 56.1 ¶ 74.  Villetti and Jibril first met each other when Villetti interviewed Jibril for the position.  Pls.' 56.1 ¶ 75.  Plaintiffs concede that in assessing candidates for the role, Guidepoint preferred applicants with either "buy side" or "sell side" experience.  Pls.' 56.1 ¶ 76.  Jibril had neither.  Pls.' 56.1 ¶ 77.  Two other women applied for the position at the same time as Jibril, one of whom was ultimately hired.  Pls.' 56.1 ¶¶ 78-79.  Subsequently, fifteen people (both men and women) were hired to create content for Guidepoint and performed aspects of the position for which Jibril had applied.  Pls.' 56.1 ¶¶ 80-81.  Until Jibril met with Villetti after her termination, she never thought that gender played a role in Guidepoint's hiring decisions.  Pls.' 56.1 ¶ 82.

## ANALYSIS

I. **LEGAL STANDARD**

   A. **Summary Judgment**

Summary judgment is proper where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id*. A court considering a motion for summary judgment must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). However, to establish the existence of a genuine issue of material fact, the non-moving party must cite admissible evidence in support of his or her contentions, rather than conclusory allegations or "the mere allegations or denials of his pleading." *See Anderson*, 477 U.S. at 248. This is true even in the context of "fact-intensive" discrimination cases. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

   B. **Elements of Employment-Related Claims**

      1. **Employment Discrimination**

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). The NYSHRL similarly prohibits an employer from discriminating "because of an individual's . . . sex." N.Y. Exec. Law § 296. Claims under Title VII and the NYSHRL are treated as "analytically identical." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir.2019). To establish

a prima facie claim of employment discrimination under those statutes, Plaintiffs must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). If a plaintiff establishes a prima facie case of discrimination, a presumption of unlawful discrimination arises, and the burden shifts to the defendant to "come forward with admissible evidence of legitimate non-discriminatory reasons for its adverse actions toward the plaintiff." *Mandell v. County of Suffolk*, 316 F.3d 368, 380 (2d Cir. 2003). Once the dust settles, "the plaintiff's ultimate burden of persuasion is the burden she bore from the outset – to persuade the trier of fact that she was the subject of illegal discrimination." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 81 (2d Cir. 2001). A plaintiff may do so by showing that the defendant's proffered reasons were pretextual or "were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Nolley v. Swiss Reinsurance Am. Corp.*, 857 F. Supp. 2d 441, 455 (S.D.N.Y. 2012).

While the same burden-shifting analysis applies to discrimination and retaliation claims brought pursuant to the NYSHRL and the NYCHRL, *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010), "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvereux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotations and citations omitted). "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Id.* "To establish a . . . discrimination claim under the NYCHRL, the

5

plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). Under the NYCHRL, a defendant is entitled to summary judgment if there is no genuine issue of material fact as to whether discrimination played a role in the defendant's actions. *See id.* at 111.

### 2. Retaliation

"Title VII [] makes it unlawful for an employer to discriminate against an employee 'because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter.'" *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010) (quoting 42 U.S.C. § 2000e-3(a)). The NYSHRL anti-retaliation provision is similar and "[t]he standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shaprio & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). A plaintiff must first make out a prima facie case of retaliation by showing that she participated in a protected activity, (2) the employer knew of her participation, (3) she was subject to a materially adverse action, and (4) "there was a causal connection between [participation in the] protected activity and the adverse employment action." *Kaytor*, 609 F.3d at 552. The alleged retaliation must be a "but-for" cause of the adverse reaction, and "[i]t is not enough that retaliation was a substantial or motivating factor in the employer's decision." *Vega*, 801 F.3d at 90-91. Once a plaintiff establishes a prima facie case of retaliation, the burden of proof shifts to the defendant to show a legitimate, non-retaliatory rationale." *Kaytor*, 609 F.3d at 552-53.

## II.     VILLETTI FAILS TO ESTABLISH A <u>PRIMA</u> <u>FACIE</u> CASE OF DISCRIMINATION OR RETALIATION

Villetti asserts three discrimination causes of action against Guidepoint: one under Title VII, one under the NYSHRL, and one under the NYCHRL.  Compl. ¶¶ 19, 21, 23.  Villetti separately asserts three retaliation claims under those same laws.  Compl. ¶¶ 25, 27, 29.  As Title VII and NYSHRL claims for retaliation and discrimination are analyzed under the same standard, the Court will assess those claims together and the NYCHRL claims separately.

### A.  Villetti Fails to Establish a Prima Facie Case of Discrimination Under Title VII and the NYSHRL

Villetti fairly alleges that she is a member of a protected class and suffered an adverse employment decision.  In seeking summary judgment, Defendant focuses on the fourth element of a <u>prima</u> <u>facie</u> discrimination case: whether "the circumstances [of Villetti's termination] give rise to an inference of discrimination."  *Vega*, 801 F.3d at 83; Guidepoint Mem. at 4.  Villetti maintains that "Guidepoint treated women differently from men on a variety of occasions," including the firing of Villetti's predecessor and two other female colleagues.  Compl. ¶¶ 11-12; Pls.' 56.1 ¶¶ 29-30, 32-35.

It is undisputed that Sebag both hired and fired Villetti.  Pls.' 56.1 ¶¶ 5-6, 36; Pls.' Opp. at 7.  As the Second Circuit has recognized, "some factors strongly suggest that invidious discrimination was unlikely.  For example, when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."  *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997).  This so-called "same actor inference" applies "especially" when "the firing has occurred only a short time after hiring."  *Id.*  Villetti was hired in September 2017 and worked for Guidepoint until her termination in March 2018.  Pls. 56.1 ¶ 2.  This six-

month time period between Villetti's hiring and firing by Sebag strongly suggests there was no discrimination.  *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 248 (S.D.N.Y. 2000) ("[W]here the interim period is under two years, the same actor inference remains significant.").

At the same time, adverse actions taken against similarly situated employees can give rise to an inference of discrimination.  *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).  Villetti argues that three other women, Ashlee Dunston, Jessica Kagin-Tropea, and "Alyssa," were also discriminated against on the basis of sex, and Plaintiff Jibril (discussed below).  Pls.' 56.1 ¶¶ 29-30, 34, 35.

Even if one were to assume that these women are similarly situated, a proposition Plaintiff has not established, Villetti's argument that their terminations or demotions give rise to an inference of discrimination is unavailing.  First, Ashlee Dunston's termination, described as Villetti's "predecessor," does not lead to an inference of discrimination.  Villetti, a female, replaced Dunston, a female.  *Cf. Littlejohn,* 795 F.3d at 313 (stating "an inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class.").  Second, the Court cannot credit Villetti's statements about "Alyssa."  While Villetti states that she "believes" this woman was terminated "following a maternity leave," Pls.' 56.1 ¶ 34, the record is devoid of any evidentiary support as to whether that relates to gender discrimination with respect to Alyssa, who herself is not a party.  In her deposition, Villetti stated she did not know whether Alyssa thought her treatment was related to gender-based discrimination.  Villetti Dep. Tr., at 185:7-16 ("Q.  And in what respect did Alyssa feel that she was the subject of gender-based discrimination.  A.  You'd have to ask her . . .").  The record is similarly lacking with respect to Kagin-Tropea.  Villetti claims that "Villetti believed the reas[o]n why Kagin-Tropea was demoted was because she [w]as on

8

maternity leave at the time," but here too Villetti does little to support this allegation. Pls.' 56.1 ¶ 32. "[U]nsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 3, 41 (2d Cir. 2000); *Deebs v. ALSTOM Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (self-serving deposition testimony, by itself, "is insufficient to defeat summary juedgment.") Because no facts or evidence support Villetti's assertions, and given the strong inference that Sebag, who both hired and made the "undisputed" decision to fire Villetti, Plaintiff does not carry her burden to make out a prima facie case of discrimination under Title VII or the NYSHRL.

### B. Villetti Fails to Establish a Prima Facie Case of Discrimination Under the NYCHRL

The NYCHRL's standard to establish discrimination is less burdensome than that of Title VII or the NYSHRL. Villetti must show by a preponderance of the evidence that she "has been treated less well than other employees because of her gender." *Mihalik*, 715 F.3d at 110 (emphasis added). She cannot meet her burden of so demonstrating.

Villetti points to two specific circumstances as adverse employment action. First, Villetti complains about being reprimanded by Sebag when she made her solo trip to Boston. But Villetti claims that "[t]he only time Sebag was dismissive or belittling of her was on his call to her while she was in Boston." Pls.' 56.1 ¶ 42. In fact, Sebag had allegedly otherwise complimented her work. Pls.' 56.1 ¶ 15. And while Villetti states "Sebag would not have talked to a male in the same way" as she was spoken to while she was in Boston, "Villetti never witnessed a conversation between Sebag and a male employee under circumstances similar to Villetti's trip to Boston." Pls.' 56.1 ¶ 39. Moreover, Villetti thought that Sebag was mad at not only her but also her male supervisor. Pls.' 56.1 ¶ 47. Ultimately, both Villetti and her male supervisor were fired from Guidepoint, Pls.' 56.1 ¶¶ 63-64, undermining any inference that her firing was on account of her gender. Second, Ghodara's "conduct of dictating what team

9

members should do and manner of communicating with them" which Villetti asserts constitutes gender discrimination. Pls.' 56.1 ¶ 44. However, there were two men on Villetti's team, and as such it is not reasonable to infer that gender played a role in Ghodara's conduct. Pls.' 56.1 ¶ 45; *see Brown v. Henderson*, 257 F.3d 246, 254 (2d Cir. 2001) (stating "the fact that both male and female employees are treated similarly, if badly, [gives] rise to the inference that their mistreatment shared a common cause that was unrelated to their sex.").

Villetti's statements in support of her discrimination claim are little more than general conclusory allegations. "Although claims under the NYCHRL are more liberally construed than claims under Title VII and the NYSHRL, the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment." *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 452 n. 18 (E.D.N.Y. 2013) (quoting *Barounis v. N.Y.C. Police Dep't*, 2012 WL 6194190, at *5 (S.D.N.Y. Dec. 12, 2012)).

**C. Villetti Fails to Establish a Prima Facie Case of Retaliation Under Title VII and the NYSHRL**

Villetti similarly fails to establish a prima facie case of retaliation under Title VII and the NYSHRL. Certainly, she alleges that she was subject to a materially adverse action by virtue of her termination. The parties dispute, however, whether Villetti sending an e-mail to Human Resources that detailed concerns she had about Sebag and Ghodadra's behavior was a "protected activity." Guidepoint Mem. at 10; *See* Pls.' Mem. at 8. Even assuming that this e-mail to HR, or an apparent follow-up conversation the next day, was a protected activity, *see* Pls.' 56.1 ¶ 51, Villetti cannot establish "a causal connection between [participation in the] protected activity and the adverse employment action." *Kaytor*, 609 F.3d at 552. Villetti does not dispute the legitimate, non-retaliatory reason given by Guidepoint for her termination, specifically that a co-worker complained about Villetti and that the CEO was upset about her trip to Boston. Pls.' 56.1

¶¶ 23--25.  The alleged retaliation must be a "but-for" cause of the adverse reaction, and "[i]t is not enough that retaliation was a substantial or motivating factor in the employer's decision." *Vega*, 801 F.3d at 90-91.

Guidepoint maintains that Villetti's dismissal was related to her sub-optimal performance. Villetti acknowledges the issues Guidepoint asserts they had with her employment.  At least one of Villetti's co-workers had complained about her performance to her supervisor, Pls.' 56.1 ¶ 25, and Sebag expressed concern about her attending the conference in Boston.  Pls.' 56.1 ¶¶ 23-24. Even if there were evidence that in deciding to terminate Villetti Guidepoint took into consideration the complaint Villetti had made, the retaliation must be more than a motivating factor in the employer's decision.  *Vega*, 801 F.3d at 90-91.  Because Guidepoint shows that its decision was related to other causes with respect to Villetti's work performance (which Villetti acknowledges, Pls.' 56.1 ¶¶ 23-25), Villetti cannot establish that "but-for" her complaint she would not have been terminated.  *Vega*, 801 F.3d at 90-91.

### D. Villetti Fails to Establish a <u>Prima</u> <u>Facie</u> Case of Retaliation Under the NYCHRL

For substantively similar reasons Defendant is entitled to summary judgment with respect to Villetti's claim of retaliation under the NYCHRL.  The NYCHRL requires that a plaintiff show that there was a "causal connection between his protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for his termination was pretextual."  *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (App. Div. 2013). Villetti acknowledges the criticism Guidepoint levies at her:  at least one co-worker complained of her performance, and the CEO of the company was dissatisfied with her.  Pls.' 56.1 ¶¶ 23-25. Given this, Villetti cannot show that Guidepoint's proffered reason for her termination was pretextual, and her retaliation claim under the NYCHRL also fails.

### III. JIBRIL FAILS TO ESTABLISH A <u>PRIMA</u> <u>FACIE</u> CASE OF DISCRIMINATION

Jibril's claims under Title VII, the NYSHRL, and the NYCHRL are predicated on Guidepoint's failure to hire her because of alleged sex-based discrimination.  Compl. ¶¶ 31, 33, 35.  There is little doubt that Jibril can satisfy the first and third elements of the four-prong test: she is a member of a protected class and alleges that she suffered an adverse employment decision.  *See* Pls.' 56.1 ¶¶ 78, 79.  As to the second element, Jibril and Guidepoint disagree about whether she was "qualified for her position."  *Vega*, 801 F.3d at 83; Guidepoint Mem. at 9; Pls.' Opp. at 9.  Jibril admits that "buy side" or "sell side" experience was a preference for the role for which she applied, Pls.' 56.1 ¶ 76, and further admits that she did not have that experience.  Pls.' 56.1 ¶ 77.

Even if this Court assumes that Jibril was qualified for the position, no reasonable juror could conclude that Guidepoint's decision not to hire her was motivated by her gender.  Jibril acknowledges that two other women applied for the same position and one was ultimately hired.  Pls.' 56.1 ¶¶ 78-79.  Jibril has therefore not alleged sufficiently discriminatory sex-based animus by Guidepoint.  Jibril admits that she never thought gender played a role in Guidepoint's hiring decisions until she and Villetti met together after Villetti was terminated.  Pls.' 56.1 at ¶ 82.  Moreover, Jibril, in asserting her claims, presents only bare and unsubstantiated allegations that the sole reason she was declined the position, which was offered to and accepted by another woman, was because *she* was a woman.  "[U]nsupported allegations do not create a material issue of fact."  *Weinstock*, 224 F.3d at 41.  Thus, under Title VII, the NYSHRL, or even the more generous standard afforded by the NYCHRL, Jibril's failure to hire claim is without merit.

## CONCLUSION

For the foregoing reasons, Guidpoint has demonstrated that that it is entitled to summary judgment as a matter of law on all claims. Accordingly, Guidepoint's Motion for Summary Judgment is GRANTED. The Clerk of the Court respectfully is requested to close the motion ECF No. 59 and enter judgment for Defendant and close the case.

**SO ORDERED.**

**Date: August 11, 2021**  **MARY KAY VYSKOCIL**
**New York, NY**  **United States District Judge**